UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

MAY 3 0 2019

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | CRIMINAL NO.: 19-412 |
| v. | § § | 18 U.S.C. § 1343<br>Wire Fraud (Count 1) |
| AMY ANGLIN, aka AMY POWELL, | § § § | 18 U.S.C. § 1343<br>Wire Fraud (Count 2) |
| Defendant. | § § § § | 18 U.S.C § 1001(a)(3)<br>False Statement (Count 3) |
| | § § § | 18 U.S.C § 1001(a)(3)<br>False Statement (Count 4) |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

**A.   THE SCHEME TO DEFRAUD**

1.   From in or about December 2015 through in or about December 2018, in the Houston Division of the Southern District of Texas, and elsewhere,

**AMY ANGLIN, aka AMY POWELL,**

defendant herein, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by false and fraudulent pretenses, representations and promises, and in so doing, transmitted, or caused to be transmitted by way of wire, radio, and television

communication in interstate commerce any writing, sign, signal, picture, and sound for the purpose of executing such scheme, all as more fully set forth below.

**B.     THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

2. At all times material to this Indictment, F. W. was a resident and citizen of Harris County, Texas, in the Southern District of Texas, who was a partially retired real estate developer involved in various enterprises and businesses in and around the Southern District of Texas.

3. At the beginning of the events relevant to this Indictment, in or around 2015, F.W. was aged 91 years old. After a prolonged illness, F. W. lost the vast majority of his eyesight in or about early 2016. From in or about March 2016 to present, F.W. was and is functionally and legally blind which left him dependent on the assistance of others to maintain his role in his various enterprises and the maintenance of his private residence, where he lived alone.

4. In or about November 2015, F.W. was introduced to defendant AMY ANGLIN, a.k.a. AMY POWELL (hereinafter ANGLIN) through one of F.W.'s sons. At the time, ANGLIN claimed to have a background in accounting and business administration.

5. Starting in or about December 2015, F.W. hired ANGLIN to serve as a personal assistant at his residence. Under the original terms of the arrangement, F.W. was to pay ANGLIN a sum of $50,000 for assistance twenty (20) hours a week at his residence helping him with administration of personal expenses and related tasks. After his illness and subsequent blindness, F.W. began to rely on ANGLIN for additional secretarial and administrative services, including handling mail and minor financial arrangements relating to several of his various businesses and the daily operation and maintenance of his household. These increased duties

gave ANGLIN access to the credit cards, bank accounts, and checkbooks of F.W.'s various personal and business ventures.

6. Beginning in or about early 2016 and continuing until in or about December 2018, ANGLIN devised a scheme to convert large amounts of F.W.'s monetary funds for ANGLIN's own personal use without authorization. Beginning in or about January 2016, ANGLIN began presenting checks to F.W. for his signature knowing that he was unable to see either the amounts included on the checks or the parties to whom the funds were to be disbursed. In pursuance of this scheme, ANGLIN would write her own name on the checks and deposit them into her own personal bank account. For calendar years 2017 and 2018, ANGLIN wrote checks to herself totaling over $275,000.00.

7. Additionally, in furtherance of her scheme, ANGLIN used several credit cards associated with F.W.'s various business interests and linked to his bank accounts to convert F.W.'s funds to her own personal use. Specifically, from in or about early 2016 through in or about November 2018, ANGLIN used a Comerica Credit Card ending xxxx9103 associated with F.W.'s businesses. During the above mentioned timeframe, ANGLIN made over $200,000 worth of unauthorized charges on this credit card. Included in this approximate total were 19 separate transactions in which money from F.W.'s Comerica Credit Card was wired to ANGLIN's friends, family, or acquaintances through the Western Union Company.

8. At all times material to this Indictment, ANGLIN also engaged in additional methods of fraudulent conversion of F.W.'s monies, including, but not limited to, fraudulently inducing F.W. to agree to loans which ANGLIN did not repay and had no intention of repaying.

9. For the purposes of these events preceding this Indictment, at no time did F.W., or any member of his family, give ANGLIN power of attorney for F.W., nor was she granted signatory authority on any bank account or credit cards relating to F.W.'s personal or business accounts. Further, ANGLIN was not authorized to make purchases on F.W.'s accounts for her own benefit or to use funds belonging to F.W. for purposes other than to purchase minor household items.

10. At all times material to this Indictment, Western Union Company is a corporation headquartered in Englewood, Colorado, within the United States. Further, all computer servers servicing the Western Union Company were and are located in Colorado after April 2017. Accordingly, any and all such transactions made with the Western Union Company from Texas after April 2017 travel through interstate wire transfer.

11. At all times material to this Indictment, defendant AMY ANGLIN was formerly known as AMY POWELL and had previously lived in the State of Oklahoma.

12. On or about February 22, 2012, using the name AMY POWELL, defendant AMY ANGLIN was convicted of Embezzlement from Insurer (18 U.S.C. § 1033) in the Western District of Oklahoma in cause number CR-11-077. ANGLIN was sentenced to serve one (1) year and one (1) day in the Federal Bureau of Prisons, followed by three (3) years of supervised release. Further, ANGLIN was ordered to repay $217,274.77 in $200 monthly installments to the private insurer she had defrauded.

13. On or about April 18, 2014, ANGLIN's supervised release was transferred from the Western District of Oklahoma to the Southern District of Texas and assigned to United States District Court Judge Nancy Atlas. ANGLIN's supervised release expired on or about April 22, 2016, with ANGLIN having a remaining restitution balance of $213,274.77. After the expiration

of ANGLIN's supervised release, the Financial Litigation Unit of the United States Attorney's Office for the Southern District of Texas (FLU) attempted to continue collecting ANGLIN's owed restitution.

14. On or about April 24, 2016, ANGLIN completed, signed, and dated a "Financial Statement" under penalty of perjury, returning it to the Financial Litigation Unit of the Southern District of Texas via United States mail. In this disclosure, ANGLIN swore that she was not currently employed, earned no salary, and had no other source of income other than her husband's wages. In fact, ANGLIN was then employed by F.W., earned a yearly salary from F.W. of approximately $50,000, and had access to other income from that employment.

15. On or about July 25, 2016, while at the United States Attorney's Office for the Southern District of Texas, in Houston, Texas, and in the presence of Department of Justice employees, ANGLIN completed, signed, dated, and submitted to the Department of Justice a Financial Statement under penalty of perjury, in which she stated that she was not employed, did not earn a salary, and had no other source of income. Factually, ANGLIN was then employed by F.W., earned a salary from F.W., and had access to other income from that employment.

C. **EXECUTION OF THE SCHEME**

**COUNT ONE**

16. The Grand Jury re-alleges and incorporates by reference the allegations in paragraphs 1-15, as if fully set forth herein.

17. On or about September 11, 2018, in the Southern District of Texas and elsewhere, the defendant,

**AMY ANGLIN,**

did knowingly devise and intend to devise a scheme and artifice to defraud F.W., by means of materially false and fraudulent pretenses and representations, namely by causing Western Union Company to complete the wire transfer control # 5433430662 of F.W.'s funds initiated by **AMY ANGLIN,** on or about September 11, 2018 to the account of N.B., an acquaintance of ANGLIN, causing these funds to be transmitted by way of wire communications from Western Union Company in Houston through the Western Union Company's computer servers in Colorado, then back to Western Union Company in Houston, Texas in interstate commerce in furtherance of executing the scheme.

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO

18. The Grand Jury re-alleges and incorporates by reference the allegations in paragraphs 1-15, as if fully set forth herein.

19. On or about August 6, 2018, in the Southern District of Texas and elsewhere, the defendant,

**AMY ANGLIN,**

did knowingly devise and intend to devise a scheme and artifice to defraud F.W., by means of materially false and fraudulent pretenses and representations, namely by causing Western Union Company to complete the wire transfer control #4864649224 of F.W.'s funds initiated by **AMY**

**ANGLIN,** on or about August 6, 2018 to the account of A.M., an acquaintance of ANGLIN, causing these funds to be transmitted by way of wire communications from Western Union Company in Houston through the Western Union Company's computer servers in Colorado, then back to Western Union Company in Houston, Texas in interstate commerce in furtherance of executing the scheme.

All in violation of Title 18, United States Code, Section 1343.

## COUNT THREE

### (False Statement: 18 U.S.C. §1001(a)(3))

20. The Grand Jury re-alleges and incorporates by reference the allegations in paragraphs 1-15, as if fully set forth herein.

21. On or about April 24, 2016, in the Southern District of Texas and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the Department of Justice, defendant

## AMY ANGLIN

knowingly and willfully made and used a materially false writing or document, namely, by submitting a Financial Statement stating that she was not employed, earned no salary, and did not have any personal source of income when in fact she was employed, did earn a salary, and had a source of income at the time of the submission.

All in violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT FOUR

### (False Statement: 18 U.S.C. §1001(a)(3))

20. The Grand Jury re-alleges and incorporates by reference the allegations in paragraphs 1-15, as if fully set forth herein.

22. On or about July 25, 2016, in the Southern District of Texas and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the Department of Justice, defendant

## AMY ANGLIN

knowingly and willfully made and used a materially false writing or document, namely, by submitting a Financial Statement stating that she was not employed, earned no salary, and did not have any personal source of income when in fact she was employed, did earn a salary, and had a source of income at the time of the submission.

All in violation of Title 18, United States Code, Section 1001(a)(3).

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7); 18 U.S.C. § 981(a)(1)(C))

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice that upon Defendant's conviction of any wire

fraud offenses charged in this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States gives notice that it will seek a money judgment against the Defendant. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the Defendant up to the amount of the money judgment.

A TRUE BILL

Original Signature on File

FOREPERSON OF THE GRAND JURY

RYAN K. PATRICK
United States Attorney
Southern District of Texas

By: _____
T. HEYWARD CARTER
STEVEN D. MELLIN
Assistant United States Attorneys
Southern District of Texas